IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JEFFREY ODOM | ) | |
| | ) | |
| v. | ) | No. 3:13-00464 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

I. Introduction

Pending before the Court is a Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence (Docket No. 1), filed by the Movant/Petitioner (hereinafter "Petitioner"), pro se. The Government has filed a Response to the Motion (Docket No. 13), and the Petitioner has filed a reply brief (Docket No. 18).

For the reasons set forth herein, the Court concludes that Petitioner's Motion To Vacate is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. (Docket No. 1 in Case No. 3:07-00256)). James Alexander was named as a Co-Defendant. (Id.) Former District Court Judge Robert Echols presided over the underlying criminal case.

Prior to trial, Petitioner's trial counsel, Deanna Bell Johnson, filed a Motion To Suppress (Docket No. 28 in Case No. 3:07-00256), which the trial court judge granted in part and denied in part, after holding an evidentiary hearing. (Docket Nos. 42, 44, 45 in Case No. 3:07-00256).

The trial court judge denied Co-Defendant Alexander's motion to suppress, and shortly before trial, Alexander conditionally pled guilty, preserving his right to appeal the suppression issue. (Docket Nos. 49, 50 in Case No. 3:07-00256).

At the conclusion of a two-day trial, a jury returned a guilty verdict against the Petitioner. (Docket Nos. 54, 58, 59, 89, 90 in Case No. 3:07-00256). At the subsequent sentencing hearing, the trial court judge found the Petitioner to be an Armed Career Criminal, subject to an advisory sentencing guidelines range of 235-293 months of imprisonment. (Docket Nos. 84, 85, 87, 91 in Case No. 3:07-00256). The trial court judge determined that a sentence outside the advisory guidelines range was appropriate, however, and sentenced the Petitioner to a term of 210 months of imprisonment. (Id.)

On appeal, the Sixth Circuit affirmed the conviction and sentence. United States v. Alexander/Odom, 467 F. App'x 355, 2012 WL 48214 (6th Cir. Jan. 10, 2012), cert. denied, 132 S. Ct. 2417 (2012); (Docket No. 92 in Case No. 3:07-00256). The Petitioner filed a petition for writ of certiorari to the United States Supreme Court, which was subsequently denied. (Docket Nos. 94, 95 in Case No. 3:07-00256).

In its decision, the Sixth Circuit presented the relevant facts as follows:

> On March 21, 2007, Murfreesboro Police Officer Jacoby O'Gwynn was patrolling in his squad car within the city of Murfreesboro. At approximately 9:28 p.m., Officer O'Gwynn saw a blue Chevy Lumina driving on University Street. The car did not have a functioning light illuminating the rear license plate (a 'tag light').
>
> Believing that a local ordinance required license plates to be illuminated by a tag light,[1] O'Gwynn activated his flashing blue lights and pulled the car over. As

[1] There is no Tennessee state law requiring a tag light. The local ordinance, Murfreesboro Code § 32-1005(c) provides:

O'Gwynn approached the driver's side door, he saw Latrice Johnson in the driver's seat, and three passengers in the car. Jeffrey Odom (Johnson's boyfriend at the time) was sitting in the front passenger's seat. Millie Gaines (Johnson's half sister) and James Alexander were sitting in the back seat. O'Gwynn told Johnson that he had pulled her over for not having a visible tag light, and O'Gwynn asked for Johnson's license, registration, and proof of insurance. She promptly complied. O'Gwynn asked Johnson if she had any guns, knives, drugs, or other contraband, to which she replied, 'No.'

O'Gwynn asked the three other passengers for identification. Odom, the front-seat passenger, complied and produced a state probation card. Alexander and Gaines, rear-seat passengers, stated that they did not have any identification. O'Gwynn asked each for his or her name, date of birth, and social security number. Mr. Alexander gave the name 'Deran Albert,' a date of birth, and a social security number. Ms. Gaines gave the name 'Terry Harris,' a date of birth, and a social security number. Instructing the occupants to wait in the car, O'Gwynn returned to his squad car to check the information they had given him.

At this point, Officer Harry Haigh arrived to provide backup. Haigh remained standing outside the Lumina, keeping watch while O'Gwynn ran the information.

Johnson's license and registration were valid, and the name 'Terry Harris' corresponded to the social security number Gaines had given (even though it was later learned that Gaines had given false information). However, the social security number that Alexander had given matched that of a female. O'Gwynn returned to the Lumina with this information while Officer Haigh used the computer in O'Gwynn's car to check for more information on Alexander. O'Gwynn asked Alexander to step out of the car, and asked him if he had any guns, knives, or drugs on his person, to which Alexander replied, 'No.' O'Gwynn asked if Alexander would mind if he patted him down, to which Alexander replied, 'No.' During the pat down, O'Gwynn discovered a loaded .357 Ruger revolver in Alexander's waistband, and called to Haigh that he had found a firearm. Haigh ordered the other occupants to show their hands. He also called for backup.

---

> Either a tail lamp or separate lamps shall be so constructed and placed to illuminate with a white light the rear registration plate and render it clearly legible from fifty (50) feet to the rear. Any tail lamp or tail lamps, together with any separate lamp or lamps for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

Within a minute or two, at least four other squad cars arrived to assist. An officer handcuffed Alexander, and O'Gwynn arrested him, read him his Miranda rights, and placed him in the backseat of his squad car. The officers ordered the three remaining occupants out of the car. They handcuffed the two women and read them their Miranda rights. Officer Haigh removed Odom from the vehicle, handcuffed him, and patted him down. He found no weapons. Haigh then searched the car and found nothing, but he could not access the locked glove compartment. Haigh could not find the key to the glovebox on Johnson's key ring, but he reached into Odom's pants pocket and found the key there.[2] Inside the glove compartment, Haigh found a loaded 9-mm semi-automatic handgun and a knit stocking cap. The gun had an obliterated serial number. Johnson claimed that the firearm was hers, and Odom denied that it was his.

All four occupants of the vehicle were taken to the police station for questioning. At the station, Alexander was finally identified correctly. The officers found that there was an active warrant for his arrest for a parole violation, and Officer O'Gwynn again read Alexander his Miranda rights. Alexander waived his Miranda rights in writing, and stated that he had purchased the .357 revolver on the street for protection.

Johnson was read her Miranda rights again at the station. She waived her rights in writing, and admitted that the gun in the glove compartment belonged to Odom and that she had lied earlier to protect him.

The police then interviewed Odom, who had been placed in an interview room where he had waited alone for some 10 minutes, his left arm handcuffed to the table. Detective Merrill Beene, in plainclothes, and Officers O'Gwynn and Haigh, in uniform, entered the interview room. All three wore sidearms, but did not brandish the weapons at any time. Detective Beene, who knew Odom, read Odom his Miranda rights; Odom waived those rights in writing.

The interview lasted about 20 minutes, with Beene doing most of the questioning. Odom was animated and argued back and forth with the officers. Odom was asked essentially the same questions over and over again, and his responses kept changing. Eventually, after being told that Johnson had already stated that the gun belonged to Odom, Odom admitted that the gun was his and that he had placed it in the glovebox. He stated that he had purchased the gun for his protection, even though he knew he was a convicted felon. During the interview, Odom never requested a break, food, drink, medication, or any special attention.

---

[2] The district court held that this search and the seizure of the key was unconstitutional. The government does not contest that point.

In addition to other offenses, Alexander and Odom were each charged with being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) & 924. Both Alexander and Odom moved to suppress nearly all the evidence, including the guns and their confessions. After holding an evidentiary hearing on June 20, 2008, the district court denied their motions almost entirely, except with respect to the glovebox key found on Odom's person. The court held that the discovery of the key was the result of an illegal search, since officers at that point would have been justified only in searching Odom for weapons to ensure the officers' safety. However, the court also held that the discovery of the gun in the glovebox was inevitable, because the officers would have used tools to gain access to the glovebox had they not found the key. While evidence of Odom's possession of the key was not allowed at trial, the fruits of the illegal search – the firearm and the hat – were allowed.

Alexander conditionally pled guilty, reserving the suppression issue for appeal. He was sentenced to a term of 84 months of imprisonment, followed by 3 years of supervised release.

Odom went to trial before a jury. At trial, over Odom's objection, the court permitted Latrine Johnson's prior testimony from the suppression hearing to be entered into evidence by the prosecution, because the prosecution was not able to secure her presence at trial. Also at trial, Odom moved for a mistrial when Officer O'Gwynn stated during redirect, 'there's some things I can't say.' The court ruled that such a statement was not so unfairly prejudicial as to warrant a mistrial.

Odom was convicted by a jury. At sentencing, the court found Odom's base offense level to be 24, because he had two or more felony convictions for crimes of violence or controlled-substance offenses. The court increased his offense level by 4 levels to 28 because the firearm he possessed had an obliterated serial number. The court then increased his offense level by 5, taking it to 33, because he was an armed career criminal under the Armed Career Criminal Act. That resulted in a guidelines range of 235 to 293 months. The court sentenced Odom to 210 months of imprisonment, followed by 5 years of supervised release.

United States v. Alexander/Odom, 467 F. App'x at 357-59; (Docket No. 92, at 1-6 in Case No. 3:07-00256).

## III. Analysis

### A. The Petitioner's Claims

Petitioner contends that his conviction should be vacated on the following grounds: (1)

he received the ineffective assistance of counsel; (2) he was subjected to an unconstitutional search; (3) his statement to the police was involuntary and obtained in violation of his right to counsel; (4) the verdict form was invalid; and (5) the trial court judge erred in calculating his sentence.

B. The Section 2255 Remedy

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[3] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. "'To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005)(quoting Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003)).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255(b); Amr v. United States, 280 F. App'x 480, 485, 2008 WL 2246367 (6th Cir. June 2, 2008); Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because

---

[3] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)); Ray v. United States, 721 F.3d 758, 761 (6th Cir. 2013).

The Court has reviewed the pleadings, briefs, transcripts, and records filed in Petitioner's underlying criminal case, as well as the pleadings, briefs, transcripts, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Ineffective Assistance of Counsel

Petitioner argues that he received the ineffective assistance of trial counsel in the underlying criminal proceeding. In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065.

Petitioner alleges that prior to trial, trial counsel conveyed the Government's plea offer of

two years and six months, and that he expressed his wish to accept the plea offer, but trial counsel "informed Petitioner that 'We are going to trial!'" (Claim One (Docket No. 1, at p. 5 of 19)).

In Missouri v. Frye, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012) and Lafler v. Cooper, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), the Supreme Court held that plea negotiations are a critical stage of criminal proceedings during which a defendant is entitled to the effective assistance of counsel. In Frye, the Court explained that trial counsel provides ineffective assistance when he or she fails to communicate and explain a formal plea offer to his or her client in a timely fashion. 132 S.Ct. at 1408. In Lafler, the Court considered the appropriate remedy to be applied where trial counsel conveyed a formal plea offer to his client, but erroneously advised the client "that the prosecution would be unable to establish his intent to murder Mundy because she had been shot below the waist." 132 S.Ct. at 1383.

The Petitioner does not contend that trial counsel failed to timely convey a plea offer to him, or that she offered erroneous advise about the proof required to establish guilt at trial. Instead, Petitioner essentially argues that his will was overborne and that trial counsel compelled him to go to trial. Based on the record of the underlying criminal proceeding, the Court finds this allegation inherently incredible. See Arredondo v. United States, supra. The transcripts of the suppression hearing, trial and sentencing hearing indicate that the Petitioner never raised with the trial court judge or otherwise counsel's conduct in coercing him to go to trial rather than accept the Government's plea offer. As an Armed Career Criminal, with 17 prior convictions spanning a 20- year period, the Petitioner was not unfamiliar with criminal proceedings, and there is no indication in the record that he was unusually timid. (Docket No. 85, at 1, Docket No. 87, at ¶¶

20-45, in Case No. 3:07-00256). This claim is without merit.

Petitioner also alleges that trial counsel failed to challenge the voluntariness of his alleged confession to the police. (Claim Two (Docket No. 1, at p. 6 of 19)). More specifically, Petitioner argues that he did not sign a Miranda waiver form before speaking with police, and that he never admitted to police that he owned the firearm found in the glovebox of the car in which he was a passenger. (Id.)

This claim is belied by the record. Trial counsel did challenge the voluntariness of Petitioner's confession, a video recording of which was entered into the record. (See Transcript of Suppression Hearing (Docket No. 46 in Case No. 3:07-00256); and Memorandum of the Court denying suppression motion (Docket No. 44, at 28-29 in Case No. 3:07-00256)). Both the trial court judge and the appeals court, however, rejected the argument, and determined that the Petitioner waived his Miranda rights; signed a waiver form, as shown on the video recording of the interview; and voluntarily admitted the firearm in the glovebox belonged to him. (Docket No. 44, at 28-29, and Docket No. 92, at 15-16, in Case No. 3:07-00256). This claim is without merit.

Next, Petitioner contends that trial counsel should have objected at sentencing to the increase of his sentence to a mandatory minimum 15 years under the Armed Career Criminal Act, 18 U.S.C. § 924(e), because the prior convictions triggering application of the statute were not included in the indictment or found by the jury. (Claim Three (Docket No. 1, at p. 7 of 19)).

The record clearly indicates that trial counsel made such an argument at the sentencing hearing, and on appeal, and the argument was rejected. (Sentencing Transcript, at 262-63 (Docket No. 91 in Case No. 3:02-00256); Statement Of Reasons, at 1 (Docket No. 85 in Case No. 3:02-00256); United States v. Alexander, 467 F. App'x at 367-68; (Docket No. 92, at 21-22

in Case No. 3:02-00256)). Accordingly, this claim is without merit.[4]

Petitioner argues that trial counsel should have challenged the composition of the jury as failing to reflect a fair cross section of citizens from his district of arrest who are familiar with the misconduct of law enforcement. (Claim Six (Docket No. 1, at p. 9 of 19)). Petitioner cites no authority supporting his claim that he is entitled to a jury composed of residents located in the area where he was arrested. See, e.g., United States v. Watkins, 691 F.3d 841, 850-51 (6th Cir. 2012)(Sixth Amendment "fair cross section" requirement does not require strict county proportionality as residents of a particular county are not a distinctive group in the community for Sixth Amendment purposes). Counsel was not deficient for failing to raise this argument as it is meritless. See, e.g., Ludwig v. United States, 162 F.3d at 458 (Counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).

D. Validity of Traffic Stop and Subsequent Searches

Petitioner argues that the traffic stop of the vehicle in which he was a passenger, the subsequent detention and search of his person, and the search of a locked glove compartment in the vehicle violated his Fourth Amendment rights, and the evidence obtained as a result should have been suppressed. (Claims Four and Five (Docket No. 1, at p. 8 of 19)). These arguments were raised before the Sixth Circuit, and they were rejected. United States v. Alexander, 467 F.

---

[4] In his Reply brief (Docket No. 18), as well as a separate document filed in his criminal case (Docket No. 99 in Case No. 3:07-00256), the Petitioner cites Alleyne v. United States, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), which held that any fact that increases a mandatory minimum sentence must be submitted to the jury and found beyond a reasonable doubt. The holding in Alleyne, however, does not apply to the fact of a prior conviction for purposes of the Armed Career Criminal Act. United States v. Wynn, 2013 WL 3941316 (6th Cir. July 31, 2013). Petitioner does not explain how the Court's holding in Alleyne otherwise applies to his case.

App'x at 359-64; (Docket No. 92, at 6-15, in Case No. 3:07-00256).

Absent exceptional circumstances, or an intervening change in the case law, a petitioner may not relitigate an issue in a Section 2255 action that has already been litigated on direct appeal. See, e.g., Wright v. United States, 182 F.3d 458, 467 (6th Cir. 1999). Petitioner has not made such a showing here. This claim is without merit.

E. Petitioner's Alleged Confession

Petitioner argues that his alleged confession was involuntary and obtained in violation of his right to counsel. (Claim Nine (Docket No. 1, at p. 11 of 19)). Petitioner raised this same argument on appeal, and the Sixth Circuit rejected it:

> Given the surrounding circumstances and the validity of the Miranda waiver, the district court did not err in finding that the confession was not obtained in violation of Odom's Fifth Amendment rights. Nothing about the questioning of Odom implicated interrogation techniques 'so offensive to a civilized system of justice that they must be condemned.' Miller v. Fenton, 474 U.S. 104, 109, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).

United States v. Alexander, 467 F. App'x at 365; (Docket No. 92, at 16 in Case No. 3:07-00256).

The Petitioner has not shown exceptional circumstances, or an intervening change in the case law, and therefore, this claim is foreclosed. See, e.g., Wright v. United States, supra.

F. Jury Foreperson's Refusal to Sign Verdict Form

Petitioner contends that the jury foreperson refused to sign the verdict form, that such refusal was hidden from the defense, and that he is entitled to an evidentiary hearing on the issue. (Claim Seven (Docket No. 1, at p. 9 of 19)). He offers no factual or legal support for this claim.

The record of the underlying criminal case indicates that the Verdict Form bears a signature purporting to be the Foreperson. (Docket No. 59 in Case No. 3:07-00256). In addition,

the transcript of the trial indicates that the trial court judge polled the jury and confirmed that the verdict was unanimous. (Docket No. 90, at 57-60, in Case No. 3:07-00256). In addition, assuming Petitioner's allegations were supported, he has not shown how they implicate his constitutional rights. Humphress, 398 F.3d at 858. Accordingly, the Court concludes that this claim is without merit.

G. Enhancement for Firearm with Obliterated Serial Number

Petitioner argues that his sentence was discriminatory because he received an enhancement for possessing a firearm with an obliterated serial number when Co-Defendant Alexander did not receive such an enhancement. (Claim Eight (Docket No. 1, at p. 10 of 19)). The Petitioner offers no factual or legal support for his argument.

To the extent the Petitioner claims that there was unwarranted disparity between his sentence and his Co-Defendant's sentence, which is to be avoided by a court imposing sentence under 18 U.S.C. § 3553(a)(6)[5], he does not allege that such disparity implicates his constitutional rights, and therefore, the claim does not warrant relief under Section 2255. Terry v. Trippett, 62 F.3d 1418 (6th Cir. 1995); Kessel v. United States, 785 F.2d 309 (6th Cir. 1986)("The mere fact

---

[5] Section 3553(a)(6) provides:

> (a) The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> * * *
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

that the plaintiff's sentence is greater than that of his co-defendant does not warrant relief under § 2255.")

To the extent the Petitioner bases this claim on the Equal Protection Clause, he has not alleged that he was similarly situated to Co-Defendant Alexander, nor that the trial court judge's disparate treatment burdened a fundamental right, targeted a suspect class, or had no rational basis. See, e.g., TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio, 430 F.3d 783, 788 (6th Cir. 2005). Therefore, any equal protection claim must fail.

H. Use of Petitioner's Prior Convictions to Enhance his Sentence

Petitioner argues that the use of his prior convictions to support an increased statutory sentence violates the Supreme Court's decisions in Shepard and Begay. (Claim Ten (Docket No. 1, at p. 11 of 19)). The Petitioner is presumably referring to the determination of his status as an Armed Career Criminal. He cites no factual or legal support for this claim.

In Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) and Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), the Supreme Court addressed the types of prior convictions that constitute a "violent felony" for purposes of the Armed Career Criminal Act. Petitioner has not explained how the trial court judge violated the holdings in these cases in determining that he was an Armed Career Criminal.[6] Accordingly, this claim is without merit.

---

[6] In his Reply brief (Docket No. 18), as well as a separate document filed in his criminal case (Docket No. 99 in Case No. 3:07-00256), the Petitioner cites Descamps v. United States, ___ U.S. ___, 133 S. Ct. 2276, 2280, 186 L. Ed. 2d 438 (2013), which addressed whether a prior conviction for burglary under California law constitutes a "violent felony" within the meaning of the Armed Career Criminal Act. Petitioner again fails to explain how the Court's holding in Descamps applies to his case.

IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE